Bill sets forth that Pit. Anna before her Marr with Testor lent him divers.Sums of Money to pay his Debts viz. in July 1729. £.191 —10 St. by Bill drawn on Jno. Maynard In Dec’r following £.30. by a like Bill In Jan’ry 1731. £.40. by another Bill & other Sums am’o to 69-9. 6>4 Curr’t & sold him Goods to Am’o £.7-15. Curr’t In the whole £.261-10 St. & 77. 4. 6>4-Curr.
That upon a Treaty of Marr. Testor agreed she sho’d enjoy *B295 all her separate Estate Notwithstanding the Marr & that he sho’d likewise pay her what he owed and in Apr. 1731. gave Bond to the Pit. in Penalty of ^1000. with Condition for Performance of said Agreem’t which Bond is annexed to the Bill
That the Testor by his Will has only devised to Pit. her separate Estate without directing the Paim’t of the Mony he owed before Marr. Therefore to have Satisfaction for that Mony out of the Testors Estate Is the Bill
Defts. Answer. Knows nothing of Testors being indebted to Pit. before Marriage & never heard of the Bond till a Year after the Marr. Denys he knows upon what Acco’t it was given Or that there was any such Agreem’t before Marr as in Bill Knows the Stock & Cattle raised on Testors Plant’n for sev’l Years both before & after Marr. were used by Pit. and that the Tob’o made on a Plant’n of Defts. descended to him from his Grandmo’r for 4 Years before Marr. were ship’d under Pits. Mark & has heard & believes the Tob’o made on his Fathers Plant’n was ship’d in same Manner & the Produce carr’d to Pits. Acco’t
Says Testor ab’t six Weeks before his Death told him that thro’ Pits. Persuasion he had paid her Son Jn’o Timson 5Q£. in Hopes to get a little Ease but he found there was no such Thing unless he would give all from his Children to hers w’ch he would not do & wished he had not paid the 50;£. Made his Fathers Will who directed him to give Pit. everything she was possessed of at the Marr saying it was more than she deserved & but for his Words Sake he would not give her a Farthing more than the Law Besides which he gives her Dower in his Lands
Has often heard his Father complain of Hardships he suffered from Pit. Never saw the Bond but in the Office Believes it to be his Fa’rs Writing The Condition whereof is thus
“ The Cond. of this Obi. is such that if the above bound W. B. “ his Heirs, Ex’rs & Adm’rs shall at all Times hereafter suffer “ the above named A. M. T. peaceably & qu'etly to keep possess ‘ ‘ & dispose of as she shall think fit all & every Part of the Estate “ that she is now [275] possessed of both real & personal without “ the Molestation of him the said W. B. his Heirs &c. And ‘ do hereby further oblige myself my Heirs &c. to pay to the “ said A. M. T. what I am justly indebted to her Then the “ above Obligation to be void &c
Says his Fa’rs Slaves & personal Estate were appraised only *B296 to 232. 13. 9. Can’t tell what his Debts are. Pit. after his Death enter’d into her Dower of his Lands & has all her separate Estate
And upon th s Answer Demurs because the Mony pretended to be lent & the Bond were before Marr. & it does not appear there was any Agreem’t the Mony sho’d be paid Notwithstanding the Marr. By which Deft, is advised the Bond 8c all Debts due before Marr. are extinguished at Law And as this Case is ought not to be set up in Equity
The Proofs in the Cause are but few 8c they are principally about the Mony lent The Pit. has exhibited some Accounts curr’t & Bi Is of Lading a Love-letter from the Testor & the Draught of a Bond formerly offered by him And it is proved for the Deft, that Pit. holds her Dower in Testors Lands & has her separate Estate And that she had two Crops of Testors 7 Years before Marr.
The great Question in this Case is whether the Pit. ought to be paid out of the Testors Estate the Mony she lent him before Marr.
The Equity set up is a pretended Agrem’t before Marr that the Testor sho’d pay the Pit. what he owed her Notwithstanding the Marr. This is suggested in-the Bill but not proved as I conceive
I shall therefore in speaking to this Cause endeavour to .shew 1. That there is not any certain or positive Proof of the Agreem’t pretended And 2. If there was That the Agreem’t is derogatory to the Rights of Marr & such as a Court of Equity will not support. I shall not rely much upon the Demurrer because we are gone into Proofs and the whole Equity of the Cause is before the Court
It cannot I think be s'ayed that there is any direct or positive Proof of the Agreem’t suggested in the Bill The Bond which is alledged to have been given for Performance of the Agreem’t has not a Sillable in it of an intended Marr or that the Condition should be performed notwithstanding Marr. Neither is there one Witness who proves any such Thing And the Deft, denies that he knows any Thing of such an Agreem’t
It appears indeed from the Papers exhibited that the Testor courted the Pit. many Years before Marr & offered her very good Terms but they were not accepted This was four Years at least before the Marr. And no Proof of any Overtures within those 4 Years or that he continued in the same Mind And yet *B297 these are the Circumstances relied upon to make out the Agree-m’t suggested in the Bill
[276] One of these Papers is a Love letter dated in 1722. 9 Years before the Marr. There is another Love letter without Date & the Draught of a Bond sent in it The Date of the Bond is cut out with Design I suppose to impose it for a Thing of later Date than it really is but the Figure 7 may be seen pretty plainly at the End And so we may conclude it was dated in 1727. 4 Years before the Marr.
I must submit whether a Man’s courting a Woman four Years before he marr’d her & then offering her advantagious Terms is any Evidence of a subsequent Marr Agreem’t suggested to be made 4 Years afterwards when there is no kind of Proof that the Courtship continued or that the Man remained in the same Mind And if it be no Evidence as I humbly conceive it is not Then are the Pits, without the least Shadow of Proof of the Agreem’t suggested
The most that can be sayed is that these Circumstances make some sort of Presumption that the Bond mentioned in the Bill was for Performance of a Marr Agreem’t for it is no necessary Consequence that because a Man once makes an advantagious Offer to his Mrs. that he should be always so disposed at any Distance of Time On the contrary we know Mens Tempers & Inclinations are very subject to change & especially in Matters of this Sort when a Mistress is obstinate
The Presumption then in this Case must be very light which according to Sir E. Coke proves nothing at all And if the Differ ^ ence between the Conditions of the two Bonds be considered it must further weaken the Presumption In that of 1727. Notice is taken of an intended Marriage whereas nothing of that is mentioned in the Bond of 1731. By the first the Testor was to make over all his own Estate as well as the Pits, (a most extravagant Proposal) The Cond. of the latter is only that she shall have her own Estate & he pay her what he owed her As there is so great a Difference between the two Conditions & one mentions an intended Marr. & the other not As there is no Proof of the Courtships continuing from 1727. to 1731. I cannot conceive that the Bond in 1727. is any kind of Proof that the Bond of 1731. was given on the same Occasion or for the same Purpose but the contrary I think is rather to be presumed
Then the Testors Decl. mentioned in the Defts. answer when *B298 he made his Will is a further Argument ag’t this Presumption After directing a Bequest of Pits, separate Estate & her Dower in his Lands he sayed it was more than she deserved & he [277] would not have done so much but for his Words Sak§ which plainly imports that whatever Marr. Agreem’t he had made was only verbal Or rather that he had only made a Promise to the Pit. (which perhaps might be after Marr) to do what he did.
This Bequest & Decl. of the Testor I presume will have some Weight In the Case of Myhil & Myhil Oct. 1735. where the Question was Whether the Pit. was a Bastard the Decl. of the Husband in his Will that he was so was much relied on And the Case of one Tranter a Bailif try’d for the Murder of Mr. Luttere was urged where Mr. Lutterel’s Words in his last Moments were allowed as Evidence ag’t the Prisoner Here we have the Will & the last Words of the Testor ag’t the Presumption they would set up.
But it will be argued perhaps Quorsum hoc To what Purpose was this Bond given This I think will admit of an easie answer by shewing that the Cond. may have a suffic’t Effect & Operation without supposing it to be made for Performance of a Marr Agreem’t
The first Part of the Cond. is that the Pit. shall keep possess & dispose of all the Estate she was then possessed of without the Molestation of the Obligor Suppose the Pit. had anything in her Possion which the Testor had or claimed a Right to (And this is no improbable Conjecture Since it appears they lived tog’r & she had the entire Use & Disposal of his Estate) This Part of the Cond. would have its Effect in securing to the Pit. a good Title to the Thing so in her- Possion And the latter Part of the- Cond. that he sho’d pay what he owed her might be intended as a better Security for the Paiment of what he owed
Thus we see this Bond might be given for another Purpose than for Performance of a Marr. Agreem’t The Condition does not necessarily import that it was given for that End but may have a suffic’t Operation to other Purposes
Since then there is not the least mention of an intended Marr. in the Cond. Since the Cond. may without any forced or strained Construction have a suffic’t Operation without supposing a Marr. Agreem’t And since there is no direct or positive Proof of such Agreem’t I hope the Agreem’t suggested in the Bill shall *B299 not be supported barely upon a slight Presumption without other Proof Especially when the Presumption is as strong or stronger from the Circumstances that have been taken Notice of that there was no such Agreem’t
It is well known that Marr is a Gift in Law of all the Wifes [278] personal Estate That it extinguishes all Debts & Contracts between the Husband & Wife And this Right a Court of Equity is always very tender to preserve And I apprehend will never take from the Husband what the Law gives him or set up a Debt w’ch the Marr has extinguished without clear Proof of an Agreem’t to that Purpose w’ch I take to.be wanting in this Case
But if the Court shall be of Opinion that the Agreem’t is sufficiently proved And that the Bond is not extinguished by the Marr Then I must endeavour to shew 2. That this Agreem’t is not such a one as a Court of Equity ought to support as being derogatory to the Marr Rights
It will be sayed that Marr Agreem’ts are always favoured which 1 agree to be true in this Sense that an Agreem’t fit and proper to be decreed will receive a favourable Interpretation for the Support of it accordnig to the Intention of the Ptys. But I deny it to be an universal Rule that all Marr. Agreem’ts are to be favoured Because there are some of such a Nature that a Court of Equity will not support them at all And this I take to be of that Kind
The usual Method in Marr Contracts is to make Use of a third Person as a Trustee However I will not pretend to say but that an Agreem’t between the intended Husband & Wife without the Intervention of a third will sometimes be supported in Equity And that whether the Agreem’t be by Promise Articles or Bond But then
If the Agreem’t be between the Husband & Wife alone I take a Difference where the same is to have Exon during the Coverture & where the Exon of it is future to the Marr. Of the first Kind are such where the Husband agrees fhat the Wife shall have any Thing to her own Use or at her Disposal during the Coverture The latter Sort are where the Husband agrees to leave his Wife so much at his Death That she may dispose by Will or the like In the first Case as the Agreem’t is without Question extinguished at Law So I take it a Court of Equity will never set it up Because it is derogatory to the Rights of Marr & in a Manner inconsistent *B300 with the Nature of it For by the Marr. the Law puts the Wife & every Thing she has under the Power & Controul of her Husband And consequently an Agreem’t to suffer her to dispose of Mony during the Coverture must derogate from & be inconsistent with the Husbands Power & the Wifes Subjection But in the 2. Case I take it the Agreem’t is neither extinguished [279] at Law or in Equity It is only suspended during the Coverture And after the Death of either Party may be set up either at Law or in Equity as the Case may require
This will appear very evident from the foil. Cases Clark a Thompson Extor of Isaac Cro. Ja. 571. Assumpsit in Cons. Pit. would marry Testor he would leave her worth 500;£. It was objected the Promise was extinguished by the Marr. but not allowed Because it was not a Duty in the Life of the Husband And Judgm’t for the Pit.
Gray a Acton 1 Sal. 325. a Bond was given before Marr. from the Husband to the Wife with Cond. if she survived & he left her 1000£ to be void Holt C. J. was of Opinion the Bond was extinguished by the Marr. being a present Debt and the Cond. was collateral but allowed a Cov’t or Promise to such Effect had been good because they raise no present Duty But two other Justices held the Debt was only suspended because it was not paiable during the Coverture & was only a Debt on Contingency
Thus at Law we see if the Agreem’t is not to have Exon during the Coverture it is not extinguished by the Marr. And we shall see presently that Equity follows the Law
Darcy a Chute 1. Ch. Ca. 21. The Pit. being a Widow & seised of a Jointure Mr. Chute the Defts. Father before Marr. with her agreed by Deed betw. them that it should be lawful for her during the Coverture to receive & dispose of the Rents of her Jointure The Court declared that the Agreem’t before Marr. with the Pit. herself was immediately extinguished by the Marr. & refused Relief Pridgeon a Pridgeons Exors 1 Ch. Ca. 117. An Agrem’t was made by Pit. & others on her Behalf before Marr with Testor that notwithstanding the Marr. the Rents & Profits of all her own Estate & what personal Estate & goods she had should be at her own Dispose It was held by the Keeper (Bridgman) assisted with two Judges (Hales & Archer) that the Agreem’t was extinguished by the Marr And Hales takes the Difference I rely on betw. an Agreem’t for any Thing to be done future to *B301 the Marr. & where the Agreem’t is to have Exon during the Coverture In the first Case he says the Agreem’t is not extinguished by the Marr. but is in the latter I will beg Leave to read the Case as I presume it will be satisfactory to the Court to have that great & good Mans Opin. in his own Words
Thus it appears the same Distinction is kept up in Equity as at Law If the Agreem’t is extinguished at Law Equity will not set it up If it be not extinguished at Law as where the Exon is future to the Marr. There is no Doubt but Equity will decree it Which is [280] all that is proved by the Cases cited on the other Side And this Difference well considered reconciles all the Cases we meet with in the Books upon this Subject tho’ at first View they may seem to clash & contradict one another
The Agreem’t in this Case as set forth in the Bill is to have Exon during the Coverture It is that the Pit. shall keep & dispose of her own Estate And the Testor pay her what he was indebted to her And so I apprehend it is not such an Agrem’t as a Court of Equity will support
It would indeed be the greatest Absurdity that such an Agremt. as this sho’d subsist after Marr for every Debt of the Wife vests in the Husband by the Marr. And so the same Pson would be both bound to pay & intitled to receive if the Debt subsisted For this Reason it is & for avoiding this Absurdity that the Law extinguishes the Debt And the same Reason will hold good why it should not be set up in Equity And I believe I may venture to say there is no Instance where a Court of Equity has set up an Agrément of this kind but they have often refused so to do as appears from the Cases cited
Obj. Haymer a Haymer 2 Vent. 343. Agrem’t between Husband & Wife before Marr. that he sho’d settle Lands on them & the Heirs o£ their Bodies Decreed ag’t the Heir of the Husband This within my Distinction for here was nothing to be done during the Coverture inconsistent with the Marr. Rights or derogatory from them
Cotton & Cotton 2 Vern. 290. A Woman Extrix of a former Husband lends 100^. to A. & B. & took a Note for it in her own Name & a Bond in Trustees Name & afterwards marr’d B. It was held this Debt was not extinguished — The Report is short & the Reasons of the Judgm’t not given But I take the Reason it turned upon was because the Woman lent the Mony as Extrix And so the Debt was not extinguished at Law the Husband *B302 being indebted to her in auter droit as our Books phrase it Vide 1 Sal. 326 — But here is nothing of a Marr Agrem’t in this Case And so nothing to the present Argum’t If any thing It serves to shew that upon these Occasions Law & Equity go hand in hand
Acton & Peirce 2 Vern. 280. is a Bond to the Wife to leave her 1000£. In which Case it is not extinguished either at Law or in Equity.
2 W’ms 243. S. P. Cannel vs Buckle.
Fursor a Penton 1 Vern. 408. Cov’t betw. Husband & Wife before Marr. that she should dispose 300;£. notwithstanding the Marr The Mony was lodged in a Trustees Hands & the Husband brings a Bill ag’t him for it suggest’g the Cov’t was [281] extinguished by the Marr The Trustee in his Answer says it is hard a Trust sho’d be defeated because the Agreem’t was improvidently made between the Husband & Wife The Reporter says the Court inclined to dismiss the Bill but there is no Resolution — This Case not being adj’d can be of little Weight But it is easie to distinguish it from the Cases cited There was a Trustee before the Court with a Sum of Money in his Hands Upon which the Court could easily lay their Hands And as all Trusts are Creatures of Chancery the Court might perhaps have taken upon them to direct the Paim’t of the Mony according to the Trust without Regard to the Informality of the Agreem’t But here is not Trust or Trustee in the Case before us And so the Cases can in no sort be compared tog’r
N. B. The Reporter seems to incline to the Difference I take And thus I hope it is evident that the Agrem’t set up if it was fully proved (w’ch I can by no Means admit) is not such a one as a Court of Equity ought to support It may seem needless then to make, any further Observations however to shew there is no great Hardship on the Pit. I must beg Leave to make a Remark or two
It appears upon the Defts. Answer & is in Part proved that the Pit. for sev’l years ship’d the Testors Tob’o under her Mark & reced the Produce & killed & made Use of the Testors Hoggs & Cattle In the Acco’t exhibited by her she has given Credit for no more than 35 . . 11. for the Produce of Tob’o And that in a gen’l Article without saying how many Hhds she received or when & there is no Credit at all for Cattle or Hogs This *B303 must appear a very inconsiderable Allowance for the Labour of 11 or 12 Hands for sev’l Years 3 according to her own acco’t Then she charges 24^. for Tools & Cloaths for the Negros So the n’t Produce is but 11^ . . 11.
It appears further upon the Answ’r that the Testor told the Deft, six Weeks before his Death he had at the Pits. Importunity fr. her Son 50;£. To get a little Ease but she would not be satisfied without having all from his Children (as indeed is plain from this Suit) No Allowance is offered to be made for this 50;£.
The Claim the Pit. sets up amounts to more than the whole Estate of the Testor So if she succeeds Not only the Testors Children will be sent a begging but sev’l of his just Cred’rs be defrauded of their Debts And besides all this the Pit. holds her Dower in the Testors Lands It is a Maxim those who will have Equity must do Equity and surely there is as much Reason & Justice that the Pit. sho’d acco’t for the Profits of the Testors Estate while she reced them & for the 50;£. pd. her Son as that the Testors Estate should be liable for this pretended Debt to her It is a piece of Justice to the Cred’rs & Children of the Testor Now I believe if a reasonable Allowance is made for the Profits reced by Pit. out of Testors Est’a If the 50^. pd. her Son & the Advantage she has made from the Dower in the Testors Lands be deducted out of her [282] Claim I mean so much of it as is proved there will be little or nothing due to the Pit.
In the Case of McCarty a Fitzhugh ab’t six Years ago which was a Bill to compel the Paiment of a Bond Debt due to the Pits. Father from the Deft, who was one of his Exors The Deft, in his Answer disclosed divers equitable Demands he had ag’t the Testor And without other Proof the Court allowed those Demands to bal’a the Bond Debt And the Suit was dismissed. I hope there is the same Equity in this Case to regard the Defts. Demands
But there is a further Circumstance in this Case which I apprehend will bar the Pits, pretended Equity if the Agrem’t was ever so fully proved It appears that the Pit. has accepted w’t the Testor gives her by his Will viz. her separate Estate & Dower in his Lands. This Acceptance I take to be a Waiver of the Benefit of this pretended Agreem’t I must submit whether this Case be not within the Equity of the Act 1. Geo. 2. 11. w’ch enacts that a Widow shall declare within 9 months Whether *B304 she will accept the Provision made for her by her Husbands Will If she fails she is forever barr’d to claim anything more than is given her by the Will Here the Wife is so far from making any Decl. that she will not accept that she actually enters upon what is given her It is plain from what the Testor declared when he made his Will that this Devise was intended in Satisfaction of what he promised w’ch must be understood of the Marr Agrem’t The Wife accept it This Acceptance I rely upon bars her from claiming anything more both by the Act of Ass. & in natural Equity & Justice There can be no Reason she sho’d have the Benefit of the Devise & this pretended Agrem’t too To the defrauding of the Cred’rs & Ruin of the Testors Children
Upon the whole I conclude 1. that there is no direct or positive Proof of any Marr Agrem’t at all And the Presumption on their Side is very light in itself & is also opposed & ballanced by as strong or stronger Presumption on our Side 2. The Cond. of the Bond does not necessarily import that it must be given for Performance of a Marr Agreem’t Because it may have a suffic’t Effect & Operation to other Purposes 3. If the Agrem’t was ever so fully proved Yet it is extinguished by the Marr being to have Exon during the Coverture & so derogatory to the Rights of Marr. & inconsistent with the Nature of it 4. The Deft, has divers equitable Demands ag’t the Pit. to the Value of hers And if she will have Equity she must do it 5. And lastly she has waived this pretended Agrem’t & barr’d herself claiming the [283] Benefit of it by accepting the Provision ¿nade for her by her Husband’s Will For all these Reasons the Pit. has no kind of Pretence to Relief in this Case And therefore I hope the Bill will be dismissed
And it was dismissed by the Opin. of the whole Court prseter Grymes Carter & Blair — Lightfoot & Dandridge gave no Opin.
April'1739.
In this Case an Appeal was prayed for but the Pit. ackw. at the Bar her Son had reced the 50;£. mentioned in the Ans’r w’ch reduced her Demand under 300;£. Sterl. It was denied